**E. C. HEDLUND, Plaintiff,**

v.

**FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Defendant.**

**Civ. No. 5014.**

United States District Court
D. Minnesota, Fourth Division.
April 5, 1956.

G. W. Townsend, Minneapolis, Minn., for plaintiff.

Chas. S. Kidder, St. Paul, Minn., for defendant.

DEVITT, District Judge.

Plaintiff is a former insurance agent for the defendant, and brings this action to recover damages for the alleged purloining of his claimed right to the "expirations" on insurance policies which he sold for the defendant company. The alleged wrongful conduct took place following the termination of plaintiff's status as an agent on January 16, 1950. Plaintiff became such agent in 1945, and thereafter placed the automobile insurance needs of many of his long-time clients with the defendant company. When the agency relationship was terminated in early 1950, for reasons which need not be recited here, the defendant company sent a letter to each of the insureds who had purchased insurance from it through the plaintiff. The letter reads as follows:

"We regretfully report that because of changes in his plans, Mr. E. C. Hedlund, your former agent, is not in a position to maintain his agency with our company, and is of course no longer representing us.

"If and when you need help in connection with your policy in the future, please do not hesitate to contact our agent, Mr. Claude C. Harris, 5332 Xerxes Avenue, Minneapolis, Minnesota. He will be available to be of service to you and will be glad to give you any help he can.

"Cordially,
"W. B. Kinnamon
"Agency Director"

The plaintiff claims that the sending of this letter had the effect of taking from him property rights in the expirations of the insurance policies he had written for the defendant, and cites in support of his contention cases which recognize the so-called "American Agency System"* and its related customs, and uphold the agent's right to the renewal commissions on insurance policies he has sold. See Alliance Ins. Co. v. City Realty Co., D.C.M.D.Ga., 52 F.2d 271; Woodruff v. Auto Owners Ins. Co., 1942, 300 Mich. 54, 1 N.W.2d 450. See also Miller Agency, Inc., v. Home Ins. Co., 1934, 276 Ill.App. 418; National Fire Ins. Co. v. Sullard, 1904, 97 App.Div. 233, 89 N.Y.S. 934; Kerr & Elliott v. Green Mountain Mutual Fire Ins. Co., 1941, 111 Vt. 502, 18 A.2d 164.

The defendant claims the letter was not written for the purpose of soliciting renewal business or of damaging the plaintiff in any way, but solely to notify the insureds of the termination of the previous agency relationship and to inform them of the proper person to see for service on their insurance contracts.

---

* American Agency System is defined in Words and Phrases, Vol. 3, p. 474 as follows: " * * * the purport * * * is that upon termination of an insurance agency, if the agent's financial obligations to the insurer are paid in full, all rights in the expiration data of existing insurance procured by the agent, belong to him" in order that the " * * * established business of an insurance agent may be preserved to him as far as possible upon the termination of his agency, and to that extent and no further * * * "

The defendant argues that, while it may be true under fact relationships which fall within the so-called American Agency System doctrine, that the insurance agent does have a property right in the expirations of policies he has written, the relationship here was not of that type, and that the rights of the parties must be governed by their contract.

The gist of the cases, assuming the existence of a relationship in the traditional American Agency System manner, is that the agent has a property right in his expirations and for an unauthorized and malicious interference with this right there may be a recovery in damages for tort. See Northwest Underwriters v. Hamilton, 8 Cir., 1945, 151 F.2d 389, 392; Woodruff v. Auto Owners Ins. Co., 1942, 300 Mich. 54, 1 N.W.2d 450; Cf. Don G. McAfee, Inc., v. Great American Indemnity Co., 1939, 289 Mich. 143, 286 N.W. 189.

■ But the property rights which are protected by the courts in these cases are ones which originate under stock insurance company dealings with its agents —or something similar to it—especially in the fire insurance field. Under such circumstances the insurance company has no direct contact with the insured; the policy is issued by the agent and countersigned by him; the agent has the power to cancel or amend the policy; he collects the premiums and makes remittance on his own to the company; he may switch companies upon the expiration of the policy or he may cancel it during its term and place the risk in another company. Under such a relationship the agent is an independent contractor and possesses a property right in the expirations which he may sell or which may be the subject of disposition upon death.

■ The evidence here shows that the contractual relationship between the plaintiff and defendant falls into a different category. The defendant is a mutual insurance company. It is owned by its policy holders. The agent occupies a different position than he does in the traditional stock insurance company-agent re-lationship. The policy is issued directly by the insurance company and not by the agent. The agent has no authority to cancel it; he usually does not collect the premiums; the policy is written on a continuous basis, and each 6 months the company bills the insured directly for future premium, and, upon payment, sends a "continuation certificate" directly to the insured. Upon payment of the renewal premium, the agent receives a renewal commission of from 8 to 10 per cent from the company.

The practice of defendant company upon the termination of its relationship with an agent was to assign the business of the former agent to some other agent for servicing. Upon the renewal of the policy, the new agent performing the service received the renewal commission. The practice was followed in this case.

The insureds were entitled to have their policies serviced in the event of loss, and should know the proper person to whom to go for such service. Obviously, the insureds could no longer go to the former agent because he could not speak or act for his former principal. The defendant acted properly in advising its insureds of the termination of the old, and of the existence of the new, agency relationship. The letter employed for this purpose is a simple, direct and business-like statement of the facts. It is not malicious, and reflects no ulterior purpose.

This plaintiff did not possess a property right of the kind protected by the cases of Northwest Underwriters v. Hamilton, 8 Cir., 1945, 151 F.2d 389 and Kerr & Elliott v. Green Mountain Mutual Fire Insurance Co., 1941, 111 Vt. 502, 18 A.2d 164.

The Court is impressed that this case is governed in principle by the decision in Woodruff v. Auto Owners Ins. Co., 1942, 300 Mich. 54, 1 N.W.2d 450, wherein the Supreme Court of Michigan held that, under circumstances similar to these, notification to the insureds that the former agency had been terminated did not constitute a malicious interfer-

ence with the property rights of the agent.

The defendant may prepare appropriate findings of fact, conclusions of law, order for judgment and form of judgment. Please submit copy to plaintiff's counsel for his objections on 5 days' notice.